**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, THE LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY, and THE STATE OF TEXAS, | § § § § | |
| | § | |
| Plaintiffs, | § | |
| | § | Civil Action No. 3:17-CV-1792-SDD-RLB |
| vs. | § | |
| | § | |
| SID RICHARDSON CARBON, LTD., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO**
**ENFORCE CONSENT DECREE AND TO ENJOIN STATE COURT ACTION**

Sir Richardson Carbon, Ltd., now known as Tokai Carbon CB Ltd. ("Tokai"),[1] files its

Memorandum in Support of its Motion to Enforce Consent Decree and to Enjoin State Court

Action and respectfully shows as follows:

**I.    INTRODUCTION**

Tokai is in an impossible position. Instead of coming to this Court, one of Tokai's

competitors—Orion Engineered Carbons, LLC and Orion Engineered Carbons GmbH

(collectively, "Orion")—has sued Tokai in Texas state court. In that suit, Orion seeks an

injunction against Tokai that would bar it from complying with the Consent Decree this Court

entered in 2018. A hearing on Orion's injunction request is set for December 6th. And if the

Texas court enjoins Tokai as Orion asks, Tokai will have no option but to violate one court's

---

[1] Tokai Carbon CB Ltd. is a limited partnership organized under the laws of the State of Texas with its principal place of business located at 301 Commerce Street, Suite 500, Fort Worth, Texas 76102. Tokai has acquired all rights and interest in Defendant Sid Richardson Carbon, Ltd. and is the successor-in-interest to all of Defendant's rights and obligations as set forth in the Consent Decree entered in this case. ECF No. 7.

order to comply with the other.

Perhaps worse, Orion did not join the United States, Louisiana, or Texas to its state-court lawsuit, even though each government is governed by, and has a real interest in, the Consent Decree. Apparently, Orion did not even notify the governments of the state-court action. Nothing bars Orion from coming to this Court to seek its injunctive relief. Yet Orion is attempting an end run around this Court's Consent Decree, this Court's continuing jurisdiction in this matter, and the interests of the federal and state governments and their citizens to enhance its own competitive position. This Court has the authority to stop Orion's improper conduct, and it should do so.

The All Writs Act, 28 U.S.C. § 1651, empowers a federal court "to issue such commands . . . as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." *U.S. v. New York Tel. Co.*, 434 U.S. 159, 172 (1977). This case is a textbook example of a party attempting to utilize the state court system to frustrate a prior order of this Court.

On August 9, 2018, after extensive negotiations between Sid Richardson Carbon (now Tokai), the U.S. Environmental Protection Agency ("EPA"), the Louisiana Department of Environmental Quality ("Louisiana"), and the State of Texas, this Court approved a 117-page Consent Decree (ECF No. 7, the "Consent Decree") regarding pollution-control procedures and requirements that Tokai is obligated under the Clean Air Act to implement at carbon-black manufacturing facilities located in Louisiana and Texas. Pursuant to the Consent Decree, and further negotiations between the parties in May 2019, Tokai is required to implement a specific package of pollution-control technology at Tokai's plant in Borger, Texas, to meet Tokai's obligations under the Consent Decree. After Orion became aware of the Consent Decree and

Tokai's related obligations, it attempted to sabotage Tokai's attempts to comply with the Consent Decree by filing a lawsuit in Texas state court in Harris County.  Most notably, Orion's suit specifically requests that the state court enjoin Tokai from incorporating the exact pollution-control technology that is the subject of the Consent Decree.

Tokai denies the allegations Orion has asserted against it in the Texas lawsuit.  But Orion's request for injunctive relief—if granted—creates a dangerous Catch-22 for Tokai.  If Tokai complies with such an injunction—and, in turn, refuses to comply with the Consent Decree—Tokai would be subject to substantial penalties (amounting to thousands of dollars for each day of violation) as well as any other sanctions that this Court may find necessary.  On the other hand, if Tokai complies with the Consent Decree—and, in turn, ignores any injunction the state court may enter—Tokai would risk finding itself in contempt of the state court.

Orion's litigation tactics clearly frustrate the Court's Consent Decree regarding the operation of Tokai's carbon-black facilities.  Tokai does not ask this Court to unduly meddle with the state court process.  Rather, it only seeks to enjoin Orion from seeking injunctive relief from the Texas state court that interferes with Tokai's ability to comply with the Consent Decree.[2]  Because the All Writs Act grants this Court the authority to do so, and for the reasons detailed below, Tokai respectfully requests that the Court grant its motion and enjoin Orion and/or the Harris County court from interfering with the Consent Decree.

## II.     BACKGROUND

### A.     The Consent Decree

Sid Richardson Carbon, Ltd. ("SRC")—Tokai's predecessor-in-interest—was (and, now

---

[2] For example, Orion's state-court suit alleges that Tokai tortiously interfered with contracts between Orion and a third party.  Tokai expressly denies all of Orion's allegations, but it does not object to litigating Orion's money damages claims in Texas state court.

operating as Tokai, still is) in the business of producing a petroleum-based product known as carbon black that is used in a wide variety of other products.  During the relevant time period for this proceeding, SRC and/or Tokai have operated carbon-black production facilities throughout the United States, including in Texas and Louisiana.

On December 22, 2017, the United States, Louisiana, and Texas (collectively, the "Government Plaintiffs") filed a complaint against SRC, alleging violations of the Clean Air Act, 42 U.S.C. 7401 *et seq.*  ECF No. 1 (the "Complaint").  On August 9, 2018, this Court approved and entered the Consent Decree, which resulted from substantial negotiations between the Government Plaintiffs and SRC.  ECF No. 7.

The obligations set forth in the Consent Decree apply to and are binding on the United States, Louisiana, Texas, and Tokai (who acquired all rights and interest in SRC).  *Id.* at 3 (¶ 6).  This Court retained jurisdiction over this proceeding until termination of the Consent Decree "for the purpose of resolving disputes arising under [the Consent] Decree or entering orders modifying [the Consent] Decree …or effectuating or enforcing compliance with the terms of [the Consent] Decree."  *Id.* at 82 (¶ 109).

Among other things, the Consent Decree governs certain aspects of Tokai's carbon-black plant in Borger, Texas.  *See, e.g.*, *Id.* at 24-45.  Notably, paragraphs 17 and 19 of the Consent Decree require Tokai to implement a Wet Gas Scrubber ("WGS")—a pollution-control technology that removes sulfur dioxide and other defined particulate matter—or other technology is that is at least as effective as a WGS, at the Borger plant no later than April 1, 2021.  *Id.* at 24-27.  Pursuant to paragraph 49 of the Consent Decree, Tokai was required to submit its plan to implement such a pollution-control technology to the EPA for review or approval.  *Id.* at 51.  If the EPA approved Tokai's proposed plan, Tokai would become

obligated—pursuant to paragraph 50 of the Consent Decree—to "take all actions required by the plan … in accordance with the schedules and requirements of the plan." *Id.* In other words, once the EPA approved Tokai's plan to implement a proposed pollution-control technology, such a plan would become part of the Consent Decree, and Tokai must implement that plan to comply with the Consent Decree. *Id.*

### B.    The Pollution-Control Plan

On May 13, 2019, pursuant to paragraphs 19 and 49 of the Consent Decree, Tokai submitted its proposed plan to implement a specific package of pollution-control technology at the Borger plant to meet Tokai's obligations under the Consent Decree (the "Pollution-Control Plan"). Exhibit B to Verified Original Petition and Application for Temporary Injunction, *Orion Engineered Carbons, LLC v. Haldor Topsoe A/S*, No. 2019-69832 (151st Dist. Ct., Harris County, Tex. Sept. 25, 2019), attached to the Declaration of George T. Graves (the "Graves Dec.") as Exhibit "1." Counsel for the U.S. Department of Justice, Environmental Enforcement Section—acting on behalf of the EPA—promptly approved Tokai's proposal. Graves Dec., Exhibit "2". Therefore, pursuant to paragraph 50 of the Consent Decree, the Pollution-Control Plan became part of the Consent Decree and Tokai is obligated to implement it. ECF No. 7 at 51 (¶ 50).

Failure to properly implement and continuously operate the Pollution-Control Plan would subject Tokai to substantial monetary penalties (including some totaling $37,500 *per day*) as well as any other remedies or sanctions that the Court finds appropriate. *See, e.g., Id.* at 59-63.

### C.    Orion Files the Texas Lawsuit to Thwart the Pollution-Control Plan

Orion openly contends in its state-court filings that it is one of Tokai's biggest competitors in the carbon-black industry. Graves Dec., Exhibit "1" at 5 (¶ 17). Indeed, Orion

operates a carbon-black plant directly across the street from Tokai's in Borger, Texas. *Id.*[3]

Needless to say, Orion stands to benefit greatly in the carbon-black industry if Tokai were unable

to comply with the terms of the Consent Decree.

Even though this proceeding was fully open to the public, Orion claims it learned about

Tokai's Pollution-Control Plan in August 2019. *Id.* at 16-17 (¶ 68). Then—in a move that, in

Tokai's view, appears designed to frustrate Tokai's plans to timely comply with the Consent

Decree—Orion filed a lawsuit styled *Orion Engineered Carbons, LLC et al. v. Haldor Topsoe*

*A/S et al.*, Cause No. 2019-69832, in the District Court of Harris County, Texas, 151st Judicial

District (the "Texas Lawsuit"). In its petition, Orion alleges that it has exclusive rights to utilize

the specific technology outlined in the Pollution-Control Plan until December 31, 2020, pursuant

to a license agreement it entered with Haldor Topsoe, Inc. ("Haldor Topsoe"). *Id.* at 16-17 (¶

68). Orion's petition seeks damages from Tokai and Haldor Topsoe on a variety of common law

contract and tort claims. Most notably, Orion seeks an order enjoining Tokai from implementing

the Pollution-Control Plan "in any carbon black plant in the U.S.," including Tokai's plant in

Borger, Texas. *Id.* at 25 (¶ 106).

A hearing on Orion's Application for Temporary Injunction is currently set for December

6, 2019 at 1:30 PM.

## III.    ARGUMENT AND AUTHORITIES

### A.    Grounds for Injunctive Relief

Together, the All Writs Act, 28 U.S.C. § 1651, and the Anti-Injunction Act, 28 U.S.C. §

2283, govern whether it is proper for a federal court to enjoin pending state court litigation.

---

[3] Notably, Orion fully acknowledges in its state court lawsuit that it entered into a consent decree similar to the one entered by this Court against Tokai. Graves Dec., Exhibit "1" at 5 (¶ 20). Orion also admits in its petition that it operates a carbon-black plant in Ivanhoe, Louisiana, indicating that Orion has sufficient contact with the State of Louisiana for this Court to have personal jurisdiction over Orion.

*Newby v. Enron*, 338 F.3d 467, 473 (5th Cir. 2003).  Under the All Writs Act, a federal court may issue all writs necessary or appropriate in aid of its jurisdiction and agreeable to the usages and principals of law.  *Id.*; 28 U.S.C. § 1651.  The All Writs Act also extends, under certain circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice.  *In re Enron Corp. Secs., Derivative & "ERISA" Litig.*, MDL No. 1446, 2008 WL 4166172, at *12 n.32 (S.D. Tex. Aug. 29, 2008) (citing *U.S. v. New York Tel. Co.*, 434 U.S. at 174).

This authority is limited by the Anti-Injunction Act, which bars a federal court from enjoining a proceeding in state court unless that action is (1) expressly authorized by an Act of Congress, (2) where necessary in aid of jurisdiction, or (3) to protect or effectuate its judgments.  *Newby*, 338 F.3d at 473-74; 28 U.S.C. § 2283.  This limitation works in concert with the All Writs Act, so that "if an injunction falls within one of the … three exceptions, the All Writs Act provides the positive authority for federal courts to issue injunctions of state court proceedings."  *U.S. v. All Funds and Holdings on Deposit and Credited to Account #XXXXXX In the Name of Asia Trust Ltd. as Trustee*, No. 3:04-cv-2631-P, 2009 WL 10703712 (N.D. Tex. July 1, 2009) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 134 F.3d 133, 143 (3d Cir. 1998)).

Here, the Texas Lawsuit falls squarely within the second and third exceptions to the Anti-Injunction Act.

### B.    An Injunction Is Necessary in Aid of the Court's Jurisdiction

As noted above, the second exception to the Anti-Injunction Act applies when the injunction requested is necessary to aid the Court's jurisdiction.  While the Fifth Circuit has

generally interpreted this exception narrowly, it has found that a threat to the court's jurisdiction significant enough to invoke the exception occurs when a state proceeding threatens to dispose of property that forms the basis for federal *in rem* jurisdiction, or, most notably, when the state proceeding threatens the federal court's "continuing superintendence." *Texas v. U.S.*, 837 F.2d 184, 186 n.4 (5th Cir. 1988). While the Fifth Circuit has not thoroughly defined what constitutes "continuing superintendence," it has analogized it to school desegregation cases, where the federal court modifies its orders as need be from time to time. *Id.*, citing WRIGHT & MILLER FEDERAL PRACTICE & PROCEDURE § 4225. District courts in the Fifth Circuit have held that a threat requiring an "aid of jurisdiction" occurs when state proceedings "interfere with [the] court's ability to decide and manage the litigation before it." *In re Ford Motor Co. Bronco II Prods. Liab. Litig.*, No. MDL-991, 1994 WL 605970, at *2 (E.D. La. Nov. 3, 1994). In particular, the Eastern District of Louisiana has noted that the "in aid of jurisdiction" exception is appropriate in the complex litigation context when "settlement is complete or imminent in the federal court." *In re Vioxx Prods. Liab. Litig.*, 869 F.Supp.2d 719, 726 (E.D. La. 2012). There, the court found that parallel state court litigation that—combined with the federal settlement— would require the defendants to pay twice on the same claims would "severely hinder" the defendants' incentive to settle, thus directly implicating the "in aid of jurisdiction" exception. *Id.* at 730.

Other circuit courts have found the "in aid of jurisdiction" exception applies in cases similar to the present case. In *U.S. v. Int'l Bhd. of Teamsters*, the Second Circuit affirmed an injunction barring collateral lawsuits by non-parties to a consent decree. 907 F.2d 277, 280 (2d Cir. 1990). Such an injunction was necessary "to avoid repetitive and burdensome litigation lest the government and the court-appointed officers be diverted from implementing the Decree by

the need to respond to endless legal actions." *Id.* Courts in the Second Circuit have similarly invoked the exception "where the court has been heavily involved in settlement negotiations or the formulation of a consent decree." *Olin Corp. v. Insurance Co. of N. America*, 807 F. Supp. 1143, 1152 (S.D.N.Y. 1992) (citing *Teamsters*; *Yonkers Racing Corp. v. City of Yonkers*, 858 F.2d 855 (2d Cir. 1988)). Similarly, the Ninth Circuit has found the "aid of jurisdiction" exception applies in situations "[w]here the district court expressly retains jurisdiction to enforce a settlement agreement, and to resolve disputes that may arise under it" leading to instances where "litigation in state court would pose a significant risk of frustrating the district court's jurisdiction over the consent judgment." *Flanagan v. Arnaiz*, 143 F.3d 540, 545 (9th Cir. 1998) (quoting *U.S. v. American Soc'y of Composers (In re Karmen)*, 32 F.3d 727, 731 (2d Cir. 1994).

Orion's Texas Lawsuit, to the extent it seeks to enjoin Tokai from implementing the Pollution-Control Plan, clearly threatens this Court's continuing superintendence. By entering the Consent Decree and retaining jurisdiction to enforce, modify, and resolve disputes arising under the Consent Decree, the Court has indicated that it intends to supervise the parties, notably to ensure that Tokai complies with the Clean Air Act and properly implements the necessary pollution-control programs. Indeed, Paragraph 19 of the Consent Decree permits Tokai to propose more effective pollution-control technologies. ECF No. 7 at 27. And because Paragraph 50 transforms approval of such proposals into mandatory obligations under the Consent Decree, it is evident that the Court intended to reserve the right to modify the Consent Decree from time to time as needed. *Id.* at 51; s*ee* WRIGHT & MILLER § 4225. Meanwhile, were the Harris County District Court to issue an injunction precluding Tokai from implementing the Pollution-Control Plan, it would terminate Tokai's ability to comply with the Consent Decree, thereby directly implicating and threatening this Court's jurisdiction. *See Vioxx*, 869 F.Supp.2d

at 726.  Because this Court expressly retained jurisdiction to enforce the Consent Decree, the "in aid of jurisdiction" exception to the Anti-Injunction Act applies, and the Court has authority to enjoin the Texas Lawsuit.

### C.    An Injunction Is Necessary to Effectuate the Court's Judgments

The third exception to the Anti-Injunction Act applies when such an injunction is necessary "to protect or effectuate [the court's] judgments.  28 U.S.C. § 2283.  Typically known as the relitigation exception, it permits an injunction where necessary to prevent state court litigation of an issue that was previously presented to and decided by the federal court.  *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 147 (1988).  In the Fifth Circuit, a three-part test determines whether the exception applies to preclude litigation of the issue in state court.  *First*, the issue at stake must be identical to the one involved in the prior federal action.  *Second,* the issue must have been actually litigated in the prior action.  *Third*, the determination of the issue in the prior action must have been a necessary part of the judgment in the earlier action.  *Next Level Commc'ns LP v. DSC Commc'ns Corp.*, 179 F.3d 244, 249-50 (5th Cir. 1995).

### 1.    *The issues at stake are identical in this case and the Texas Lawsuit*

In satisfaction of the first part of the test, the issue at stake in the Texas Lawsuit—regarding the injunctive relief sought by Orion—is identical to the issue at stake in the federal litigation.  By suing Tokai, the Government Plaintiffs presented the issue of whether Tokai had to act in compliance with the Clean Air Act by implementing pollution-control technologies at its carbon-black plant in Borger, Texas, and other facilities.  The Consent Decree, by now requiring Tokai to implement the technologies identified in the government-approved Pollution-Control Plan, firmly establishes that the answer determined for this issue was "yes."  *See* ECF No. 7 at 51 (¶ 50).  Indeed, the Consent Decree expressly notes that the parties to this suit agreed that the

actions to be taken by the parties "will result in air quality improvements, and . . . is the most appropriate means of resolving this matter."  *Id.* at 2.

Orion attempts to distinguish the issue behind its request for injunctive relief by couching its claim against Tokai as tortious interference with a contract.  Graves Dec., Exhibit "1", at 21 (¶ 96).  But, by requesting that Tokai be enjoined from implementing the very specific pollution-control technology that is the subject of the Pollution-Control Plan now adopted into the Consent Decree, the actual issue Orion seeks to litigate becomes clear.  The issue Orion clearly wants the Texas Lawsuit to determine is whether Tokai is required (and permitted) to implement that technology.  Because this Court has already addressed that issue, this first part of the test is satisfied.

      2.     *The issue was actually litigated in this Court*

As established through the analysis of the Consent Decree above, the issue currently pending in the Texas Lawsuit was actually litigated in this Court.  An issue that is put to a trier of fact for determination and is determined is an issue that has been "actually litigated."  *All Funds and Holdings*, 2009 WL 10703712 at *9.  While the matter of actual litigation can be complicated when the litigation in question results—as in this case—in the approval of a consent decree, an issue can still be considered litigated for issue preclusion purposes if there is clear evidence concerning the issues that the parties intended to preclude.  *Kaspar Wire Works, Inc. v. Leco Engineering & Mach., Inc.*, 575 F.2d 530, 542 (5th Cir. 1978).

Here, the parties clearly intended that the issue of whether Tokai must implement pollution-control technology at its Borger plant was to be precluded from further litigation.  The parties expressly agreed in the Consent Decree that the actions outlined in the decree for Tokai to undertake were "the most appropriate means of resolving this matter."  ECF No. 7 at 2.

Furthermore, the Consent Decree expressly requires any "material change" of its terms to be approved by this Court. *Id.* at 79 (¶ 101). Had the parties and this Court intended to allow the issue of whether and how Tokai was required to implement the Pollution Control Plan to be relitigated elsewhere, then the Court's approval of such a material change to the Consent Decree would not have been required.

Finally, it is clear that the Court actually litigated this issue because it expressly granted the Government Plaintiffs' Motion to Enter the Consent Decree. ECF No. 5. In reviewing a proposed consent decree, the reviewing court is to ascertain whether the decree is fair, adequate, and reasonable. *Id.* at 8 (citing *Cotton v. Hinton*, 559 F.2d 1327, 1330 (5th Cir. 1977). In other words, the Court was required to determine whether Tokai should be compelled to implement pollution-control technologies at certain of its plants. By granting the Government Plaintiffs' Motion (ECF No. 6) and entering the Consent Decree, this Court necessarily made a determination on the specific issue that Orion now seeks a contrary ruling on from the state court. Therefore, the second part of the relitigation exception test is satisfied.

> 3.    *The issue was necessary to this Court's judgment*

Finally, it must be established that "the determination of the issue in the prior action must have been a necessary part of the judgment in that earlier action." *Next Level*, 179 F.3d at 250. In other words, if the issue was a necessary part of the district court's final decision in the first action, the issue cannot be litigated again in a later state-court action. *See id.* at 255 (conclusion that appellee was already compensated fully by the judgment was a necessary part of district court's judgment). Here, this test is easily satisfied. Because the Court had to make the determination that the Consent Decree was fair, adequate, and reasonable, it naturally had to conclude that Tokai was obligated to implement the pollution-control procedures at its Borger

plant.  Had the Court reached the opposite conclusion, it could not have reached its ultimate determination that the Consent Decree was fair, adequate, and reasonable.  Because the issue at stake in the Texas Lawsuit was fundamental to the Court's decision to approve the Consent Decree, the third part of the test is satisfied.  *See All Funds and Holdings*, 2009 WL 10703712 at *10 (court's prior findings regarding conflicts of interest were fundamental to court's decision to enforce the settlement agreement).

As demonstrated above, the three-part *Next Level* test can be fully satisfied.  Therefore, the relitigation exception to the Anti-Injunction Act applies and the Court should enjoin Orion's attempts to seek injunctive relief in the Texas Lawsuit.

### D.    The Principles of Equity Favor an Injunction

In addition to determining whether an exception to the Anti-Injunction Act applies, the Court must also determine that the general principles of equity are satisfied before an injunction may be issued pursuant to the All Writs Act.  *Moore v. Louisiana Through Insurance Rating Commission*, No. 05-374-JJB, 2007 WL 9702280, at *5 (M.D. La. Jan. 26, 2007).  A party seeking an injunction must establish: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the party will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury outweighs the threatened harm that the injunction will cause the party against whom injunctive relief is sought; and (4) that the injunction will not disserve the public interest.  *Planned Parenthood of Gulf Coast, Inc. v. Gee*, 862 F.3d 445, 457 (5th Cir. 2017).[4]

---

[4] Regarding the relitigation exception to the Anti-Injunction Act, the Fifth Circuit has held that no independent demonstration of irreparable harm or a lack of alternative remedies is necessary to obtain an injunction.  *Ballenger v. Mobil Oil Corp.*, 138 F. App'x 615, 622 (5th Cir. 2005) (citing *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 667 (5th Cir. 2003)).  Therefore, if the Court determines that the relitigation exception applies in this case, no further analysis of the equities of the injunction need be conducted.

Because, as discussed above, the exceptions to the Anti-Injunction Act apply, Tokai has already established the first factor of the equity analysis. *See Moore*, 2007 WL 9702280 at *5. The remaining factors also weigh heavily in favor of granting an injunction here.

       1.     *Failure to grant an injunction will result in irreparable injury to Tokai.*

The Middle District of Louisiana has previously found that the potential for conflicting federal and state orders, placing the party "in limbo," is sufficient to establish irreparable harm. *See Moore*, 2007 WL 9702280 at *5 (noting that irreparable harm is established when a potential state court order would cause party to face contempt proceedings if it takes actions that the federal court has previously found to be legal). Orion's requested injunction puts Tokai squarely in limbo. If the state court enjoins Tokai from complying with the Consent Decree, Tokai would be forced to either comply with the state injunction (putting it in contempt of this Court) or ignore it (putting it in contempt of the state court). To put Tokai in such a position is inherently unreasonable and clear irreparable harm.

       2.     *Injury to Tokai outweighs any damage that an injunction would cause to Orion*

The threatened injury to Tokai that a state court injunction would cause far outweighs the harm that would be caused to Orion if this Court enjoins them from seeking injunctive relief in the Texas Lawsuit. Tokai does not ask this Court to enjoin Orion from litigating *any* of its claims in Harris County. To the extent the claims in Orion's Texas Lawsuit have merit (which Tokai denies), Tokai does not challenge Orion's ability to seek monetary damages related to those claims in the state district court.[5] Any harm that would allegedly be remedied by issuing

---

[5] Tokai's position here is not intended to contradict or waive any allegations, objections, or defenses that Tokai has raised in the Texas Lawsuit.

an injunction against Tokai regarding the Pollution-Control Plan can be remedied by an assessment of monetary damages.

Moreover, if Orion truly believes it is entitled to an injunction barring Tokai from complying with the Consent Decree, Orion is free to bring that claim in this Court. In that instance, and unlike in the Texas Lawsuit, all the parties with an interest in the Consent Decree—including the Government Plaintiffs—will be before the Court and will have an opportunity to protect their respective interests in the Consent Decree. Therefore, this factor also weighs in favor of enjoining the Texas Lawsuit.

      *3.      The injunction will not disserve the public interest*

An injunction against the injunctive relief requested in the Texas Lawsuit would not disserve the public interest. Rather, such an injunction would fully be in the public's interest. The Consent Decree regards the implementation of pollution-control technologies and procedures that will reduce the amount of pollution caused by Tokai's carbon-black manufacturing process. It is clearly in the public's interest to reduce such pollution. Were the state court to enjoin Tokai from implementing such procedures, it would naturally lead to the impairment of Tokai's ability to reduce its own pollution emissions, thereby potentially harming the environment and the public at large. *See also* ECF No. 7 at 2 ("WHEREAS, the Parties recognize, and the Court by entering this Consent Decree finds … that this Consent Decree is fair, reasonable and in the public interest").

The principles of equity clearly weigh in favor of enjoining Orion from seeking injunctive relief in the Texas Lawsuit. Therefore, Tokai's motion should be granted.

IV.    **CONCLUSION**

The All Writs Act and the exceptions to the Anti-Injunction Act provide the means for the Court to preclude Orion from seeking an injunction against Tokai in the Texas Lawsuit where that injunction would prevent Tokai from complying with the Consent Decree.  Therefore, Tokai respectfully requests that Orion be: (1) ordered to dismiss its claim for injunctive relief against Tokai in the Texas Lawsuit; (2) enjoined from further attempts to seek an injunction precluding Tokai from implementing its Pollution-Control Plan pursuant to the Consent Decree; and (3) further enjoined from filing any other requests for injunctive relief regarding Tokai's implementation of the Pollution-Control Plan without first obtaining prior leave of this Court to do so.

Respectfully submitted,

/s/ S. Bradley Rhorer

S. Bradley Rhorer
Louisiana State Bar No. 25487
bradr@rhorerlaw.com
RHORER LAW FIRM
10566 Airline Highway
Baton Rouge, Louisiana 70816
(225) 292-2767
(225) 292-2769 (Facsimile)

Richard D. Anigian (Lead Attorney)
Texas State Bar No. 01264700
rick.anigian@haynesboone.com
Charles M. Jones II
Texas State Bar No. 24054941
charlie.jones@haynesboone.com
George T. Graves
Texas State Bar No. 24066942
george.graves@haynesboone.com
HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
(214) 651-5000
(214) 651-5940 (Facsimile)
(*pro hac vice* applications to be submitted)

**ATTORNEYS FOR DEFENDANT
SID RICHARDSON CARBON, LTD., n/k/a
TOKAI CARBON CB LTD.**

## CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2019, I electronically transmitted the attached document to all counsel of record via the Court's ECF system.

*/s/ S. Bradley Rhorer*
S. Bradley Rhorer